**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07-CR-0075-002-CVE |
| | ) | (09-CV-0592-CVE-PJC) |
| **HERMAN LEROY FRISTOE,** | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

On September 11, 2009, defendant Herman Leroy Fristoe, a federal prisoner appearing pro se, filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Dkt. # 85). Section 2255 provides that "a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or law of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."

**I.**

On April 16, 2007, a complaint was filed charging Herman Leroy Fristoe and Bryan Robert Ray with possessing with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(ii). Dkt. # 1. The charges stemmed from a traffic stop on Interstate 44 (I-44) in which law an Oklahoma Highway Patrol (OHP) officer found approximately one kilogram of cocaine hidden in the center console of a rental vehicle, and Fristoe and Ray were both occupants of the vehicle. The Court appointed counsel for both defendants. On May 9, 2007, the Grand Jury returned an indictment (Dkt. # 18) alleging the same charge contained in the complaint. Each defendant filed a motion to suppress

(Dkt. ## 26, 30) evidence seized during the traffic stop, and Ray filed a motion to sever (Dkt. # 28) alleging improper joinder of defendants in a single indictment.

The Court held a suppression hearing on June 28, 2007. The parties waived opening statements at the hearing and the Court treated the parties' briefs as their opening statements. Dkt. # 77, at 11. The government presented the testimony of OHP Trooper Ty Owen. Owen conducted the traffic stop that led to Ray's and Fristoe's arrest on April 15, 2007. He testified that Ray was driving the vehicle and Fristoe was a passenger, and Ray failed to signal a lane change before pulling into the toll booth lanes on I-44. Dkt. # 54, at 5-6. After pulling the vehicle over, Owen asked Ray to sit in his patrol car while Owen completed a warning citation for failure to signal a lane change. Based on Ray's conduct, Owen became suspicious that criminal activity was afoot. Id. at 10. Ray claimed that the vehicle was a rental but stated that he had left the rental agreement in Missouri with his wife. Id. at 13. Owen testified that he needed evidence of the vehicle's registration to complete a warning citation, and he approached the passenger side of the vehicle to ask Fristoe to look for the rental agreement or registration. Id. at 15. Fristoe rolled down the window about three inches and acted as if he did not want to talk to Owen. Owen asked Fristoe to roll down the window further, and Fristoe complied with Owen's request. Owen asked Fristoe to look for the rental agreement, but Fristoe claimed he could not find it. Owen asked Fristoe to open the center console and Owen observed a "black taped-up kilo-size bundle" that he believed contained about a kilogram of a controlled substance. Id. at 17. Owen placed Ray and Fristoe in handcuffs and retrieved the black bundle from the vehicle. He found approximately one kilogram of cocaine inside the bundle. At the suppression hearing, defendant Ray also argued that joinder of both defendants for one trial was prejudicial, but Fristoe declined to adopt this argument because

he and his attorney had not made a strategic decision whether to seek severance. Dkt. # 97, Ex. A, at 2.

The Court denied both motions to suppress and Ray's motion to sever. Dkt. # 34. The Court found that Owen had reasonable suspicion to initiate a traffic stop and the length of the traffic stop was reasonable. Id. at 10-12. The Court rejected Fristoe's argument that Owen's request for Fristoe to look for the rental agreement in the center console was Fourth Amendment conduct and, in any event, the bundle containing narcotics was in plain view and Owen could lawfully enter the vehicle to seize the bundle. Id. at 12-17. The Court also found that Ray had not shown that the defendants would present antagonistic defenses, nor had he identified any evidence that would be admissible against Fristoe but not admissible against Ray. Id. at 7-9. Ray believed he would have a better chance of obtaining an acquittal if his motion to sever were granted, but he had not shown any prejudice from joinder of the defendants in a single indictment.

Following the suppression hearing, the government filed an enhancement information (Dkt. # 49) alleging that Fristoe had a prior conviction for a felony drug offense. Before the enhancement information was filed, Fristoe was facing a mandatory minimum sentence of five years and a maximum sentence of 40 years; after the enhancement information, he was facing a mandatory minimum sentence of 10 years and a maximum sentence of life imprisonment. The government filed notice that it intended to impeach Fristoe, under Fed. R. Evid. 609(b) with evidence of his prior conviction for bank robbery, if he testified at trial. Dkt. # 47. The government also filed notice that it intended to offer evidence under Fed. R. Evid. 404(b), of Fristoe's prior conviction for distributing cocaine and cocaine base (crack), to show Fristoe's knowledge, intent, and the absence of mistake or accident. Dkt. # 51.

3

On the first day of trial, counsel for the government made an opening statement, and counsel for both defendants also elected to make their opening statements at the beginning of trial. Fristoe's attorney, Gregg L. Graves (defense counsel) acknowledged that Fristoe had a prior conviction for distributing illegal drugs and was found in a vehicle with a substantial amount of cocaine. Dkt. # 94, at 8-9. He argued that Fristoe was unaware that there was any cocaine in the vehicle and that circumstantial evidence suggested that Ray placed the cocaine in the vehicle. He stated that Ray had approximately $3,000 in cash on his person when he and Fristoe were arrested, and Fristoe was a "broke, worn-out, 60-year-old man who didn't have the money to do this type of transaction." Id. at 10. The parties stipulated to the amount of cocaine recovered from the rental vehicle and also stipulated that a fingerprint examiner was unable to locate any fingerprints on the packaging containing the drugs. Id. at 11. The government's first witness was Owen, and Owen testified about the circumstances surrounding Ray's and Fristoe's arrest and the seizure of the drugs. Defense counsel cross-examined Owen and attempted to cast doubt on Owen's testimony that Fristoe was nervous while talking to Owen. Id. at 44-54. Defense counsel questioned the accuracy of Owen's drug dog. Id. at 56-57. He also asked Owen about the nature of the drug transaction and questioned why a higher-level drug dealer would have given Ray or Fristoe such a large amount of cocaine.

The government next called OHP Trooper Darren Koch to testify about his search of the rental vehicle following the initial traffic stop. Koch testified that he found a plastic bag containing black tar heroin in the back seat of the rental vehicle underneath some clothing. Id. at 62. He did not attempt to ascertain whether Ray or Fristoe claimed ownership of the black tar heroin, and he did not interrogate either defendant. Michael Rupe, an agent for the Drug Enforcement Agency, testified about drug smuggling practices and the techniques allegedly used by the defendants in this

case to smuggle illegal drugs. He testified that the amount of drugs found in the vehicle suggested that the drugs were intended for resale, rather than personal use, and drug smugglers frequently used rental vehicles. Id. at 69-70. The vehicle in this case had been altered to disguise the fact that it was a rental vehicle and a sticker denoting the identity of the rental car company had been removed from the rental vehicle. Id. at 72. Koch testified that drug dealers do not place drugs with unwitting transporters due to the value of the drugs, and it is unlikely that both defendants were unaware that the cocaine was in the vehicle. Id. Defense counsel cross-examined Koch and established that there is some correlation between drug trafficking and the sale of pit bulls. Id. at 79. Ray's defense was, in part, based on his argument that he traveled to Dallas to sell pit bull puppies to an unidentified purchaser. The government rested its case at the end of the first day of trial.

On the second day of trial, Ray presented his case-in-chief and decided to testify in his own defense. He explained that the purpose of the trip to Dallas was to sell a pit bull puppy and he delivered the dog to his wife's brother, "Coy." Dkt. # 95, at 6-7. Ray claimed that Fristoe asked him to stop at a restaurant on the way home to Kansas, and they were not together the entire time. Id. at 8. He claimed that Fristoe was alone for at least six or seven minutes, and he found Fristoe talking to a man in the parking lot before they left the restaurant. Ray testified that he did not know that there was any cocaine in the rental vehicle and, given his knowledge of Fristoe's criminal history, he believed that Fristoe placed the drugs in the rental vehicle. On cross-examination, counsel for the government established that Ray did not actually see Fristoe receive a package from the unidentified person in the restaurant parking lot and Ray had access to the center console. Id. at 15-16. The government produced a transcript of Ray and Fristoe's conversation in the back seat of Owen's patrol car, and asked Ray if he and Fristoe were attempting to get their "story straight."

Id. at 24. Defense counsel asked Ray about the trip to Dallas. Ray testified that he dropped Fristoe off with "Latrice" and picked him before the return trip, but Ray maintained possession of the rental vehicle while they were in Dallas. Id. at 32. Although Ray now believed the Fristoe put the drugs in the car, defense counsel attempted to show that Ray recently made this story up and had not asserted this defense to law enforcement officials at any time before trial. Id. at 35-38. Ray rested his case after his testimony was completed.

Fristoe presented his case-in-chief and defense counsel recalled Rupe and Owen to the stand. Rupe testified that he had never heard Ray's version of events before the trial and this was the first he had heard of Fristoe meeting a person in a restaurant parking lot. Id. at 53. Defense counsel clarified that Owen did not actually know if the heroin found wrapped in a jacket belonged to Fristoe, but this was simply Owen's personal opinion based on the circumstantial evidence. Id. at 55-56. Fristoe rested his case following Owen's testimony.

The Court excused the jury following the completion of the evidence, and counsel for Ray and Fristoe renewed defendants' motions for acquittal. The Court denied the motions. The Court asked the parties if they had time to review the proposed jury instructions and verdict forms, and the parties agreed that they were prepared for the jury instruction conference. The government withdrew its request for an instruction concerning false exculpatory statements by a criminal defendant, because this issue was adequately addressed by the pattern Tenth Circuit instruction on knowledge and access. Id. at 64. Defense counsel objected to the instruction permitting the jury to consider Rule 404(b) evidence against Fristoe, but he subsequently withdrew the objection. Id. at 66-67. The Court instructed the jury and counsel for all parties made closing arguments. Defense counsel argued that Ray concocted a story after his arrest and attempted to shift the blame for

trafficking cocaine onto Fristoe. Id. at 84-85. He identified several inconsistencies with Ray's testimony and the evidence presented by the government, but he did not deny that Fristoe used illegal drugs. He argued that only one of the defendants knew that there was cocaine in the rental vehicle, and he pointed out certain evidence suggesting that Ray arranged the trip to Dallas to pick up a shipment of cocaine. Id. at 90-91.

The jury asked to see the video of the traffic stop recorded by the camera on Owen's patrol car, and the Court showed the jury the video in the courtroom with counsel for all parties present. Id. at 97. About an hour later, the jury notified the Court that it had reached a verdict. The jury acquitted Ray but found Fristoe guilty of possessing cocaine with intent to distribute. The Court informed Fristoe that a presentence investigation report (PSI) would be prepared and his sentencing hearing was set for December 14, 2007. The Court sentenced Fristoe to the statutory minimum of ten years imprisonment. Dkt. # 71. Fristoe appealed the denial of his motion to suppress to the Tenth Circuit and, on September 12, 2008, the Tenth Circuit Court of Appeals affirmed the denial of Fristoe's motion to suppress for substantially the same reasons stated in the Court's suppression order. Dkt. # 80, at 4-5.

Defendant filed a § 2255 motion on September 11, 2009. Fristoe's conviction became final on December 11, 2008 when his time to file a petition for writ of certiorari with the United States Supreme Court expired. Clay v. United States, 537 U.S. 522, 527 (2003). Fristoe filed his motion to vacate, set aside, or correct sentence under § 2255 on September 11, 2009. Therefore, Fristoe's motion was filed within the one year statute of limitations provided by § 2255, and his motion is timely.

## II.

Fristoe raises two ineffective assistance of counsel claims in his § 2255 motion. First, he claims that his attorney failed to raise certain arguments or make objections at his suppression hearing, trial, and sentencing hearing. Second, Fristoe claims that defense counsel did not conduct an adequate investigation because he did not contact potential witnessed identified by Fristoe before trial. The government responds that Fristoe's arguments are meritless and has produced an affidavit by defense counsel rejecting defendant's allegations.

## A.

Defendant claims that his attorney failed to raise arguments and make objections at hearings and trial, and defense counsel's omissions prejudiced defendant. Defendant claims that his attorney did not make an opening statement at the suppression hearing and failed to contest the evidence offered by the government at that hearing. He argues that defense counsel did not object to Ray's argument that Ray could offer Rule 404(b) evidence against Fristoe. He also argues that defense counsel should have filed a motion seeking severance or separate trials for the charges against Ray and Fristoe due to prejudicial joinder of defendants in one indictment.

To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a]

counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

To establish the second prong, a defendant must show that this deficient performance prejudiced the defense to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993). In Glover v. United States, 531 U.S. 198, 199 (2001), the Supreme Court held that "any amount of actual jail time has Sixth Amendment significance." Thus, the prejudice prong of the Strickland test does not require that any increase in sentence must meet a standard of significance. See United States v. Horey, 333 F.3d 1185, 1187-88 (10th Cir. 2003).

Defense counsel's waiver of opening statement at the suppression hearing was consistent with local practice, and this does not constitute ineffective assistance of counsel. The Court generally treats the parties' briefs as their opening statements at a suppression hearing, and the burden is on the government to establish that the defendant's constitutional rights were not violated. Counsel for all parties followed this procedure and waived opening statement at the suppression hearing. See Dkt. # 77, at 11. The transcript of the suppression hearing shows that defense counsel conducted a lengthy cross-examination of Owen and challenged all aspects of the traffic stop, defendant's arrest, and the subsequent search of the rental vehicle. All counsel were afforded an opportunity to make closing arguments, which defense counsel did. Dkt. # 77, at 17-20. Defendant

has not identified any specific arguments that defense counsel failed to raise at the suppression hearing. It appears that defendant believes that his attorney should have exercised every available opportunity to object to the government's evidence or assert defendant's innocence. However, defense counsel did not have a duty to argue simply for the sake of argument and, quite to the contrary, the transcript of the suppression hearing shows that defense counsel asserted every relevant argument that could be raised in support of defendant's motion to suppress evidence seized during the traffic stop. Defense counsel's performance at the suppression hearing did not fall below an objective standard of reasonableness.

Defendant argues that defense counsel should have filed a motion to sever based on the prejudicial joinder of defendants in a single indictment. This argument is meritless for at least two reasons. First, the decision not to file a motion to sever was the result of a strategic decision by defense counsel, and strategic decisions may be challenged as ineffective only in rare circumstances. Defense counsel has submitted an affidavit stating that he chose to remain silent on the issue of severance, because he had consulted with defendant and they had not made a "strategic determination regarding the joinder of parties." Dkt. # 97, Ex. A, at 1. Second, defendant has not shown that a motion to sever would have been any more successful than the motion actually filed by his co-defendant. Ray filed a motion to sever based on prejudicial joinder of two defendants in a single indictment. However, the Court found that the potential that co-defendants might raise antagonistic defenses was not sufficient to show prejudice from joinder of multiple defendants for a joint trial. Dkt. # 34, 8-9. The Court also determined that the same evidence, including Rule 404(b) evidence against Fristoe, would be admissible against Fristoe during a single or joint trial, and Ray's defenses at trial would not be limited by joinder. Defendant has not identified any

prejudice that resulted from joinder of both defendants for one trial and, at most, he argues that he was convicted while Ray was acquitted and this shows that joinder was prejudicial to him. However, the mere possibility that defendant would have had a better chance of acquittal would not have been a sufficient basis to request separate trials, and the Court will not consider defendant's retrospective argument that defendants were misjoined for trial based on the unfavorable outcome of a trial. United States v. Jones, 530 F.3d 1292, 1303 (10th Cir. 2008).

Defendant also claims that his attorney did not object to his co-defendant's intention to use Rule 404(b) evidence against him at trial. Defendant's argument is based on a statement by defense counsel at the suppression hearing when defense counsel failed to object to the potential use of Rule 404(b) evidence against defendant. See Dkt. # 77, at 4. However, Ray did not actually use Rule 404(b) evidence against Fristoe at trial, and defense counsel's failure to object to the hypothetical use of Rule 404(b) evidence at a pretrial hearing does not constitute ineffective assistance of counsel. The government filed notice that it intended to use Rule 404(b) evidence against defendant and impeach him with prior convictions if he took the stand (Dkt. ## 47, 51), and the government did introduce evidence at trial of defendant's prior conviction for drug trafficking. Even if defense counsel had objected to Ray's proposed use of Rule 404(b) evidence, the government had a permissible use for this evidence at trial and it would have been admitted at trial over defense counsel's objection. Therefore, defense counsel's failure to object to Ray's proposed use of Rule 404(b) evidence at a pretrial hearing does not constitute ineffective assistance of counsel.

**B.**

Defendant argues that defense counsel failed to contact or subpoena witnesses that defendant identified before trial, and this failure to investigate constituted ineffective assistance of counsel.

11

The government responds that defense counsel contacted the witnesses mentioned by defendant and discovered that the witnesses did not possess any information relevant to the charged offense, and defense counsel made a strategic decision, based on a reasonable investigation, not to call certain witnesses at trial.

Defense counsel in every criminal case has an obligation to conduct an adequate investigation into the government's case against a defendant, because "[t]he duty to investigate derives from counsel's basic function . . . to make the adversarial testing process work in the particular case." Barkell v. Crouse, 468 F.3d 684 (10th Cir. 2006) (quoting Williamson v. Ward, 110 F.3d 1508, 1514 (10th Cir. 1997)). However, defense counsel is not ineffective for failing to investigate if defense counsel made a strategic decision not to investigate an implausible or unlikely lead and the decision not to investigate was reasonable considering all of the circumstances. Strickland, 466 U.S. at 691; see also United States v. Carr, 80 F.3d 413 (10th Cir. 1996) (defense counsel's "decision not to pursue every lead provided by [the defendant] was within [defense counsel's] sphere of decision making as an attorney"). When challenging a defense attorney's alleged failure to investigate potential witnesses or call witnesses at trial, a criminal defendant asserting an ineffective assistance of counsel claim should make a proffer of the witnesses' testimony to show that the potential witnesses would likely have offered relevant testimony at trial. See United States v. Walker, 2008 WL 3200688, *13 (N.D. Okla. Aug. 5, 2008).

Defendant's claim of an alleged failure to investigate is refuted by defense counsel's affidavit, and defendant's claim is not supported by any specific factual allegations as to the relevance of the testimony of the potential witnesses he has identified. Defense counsel states that he did "speak with or attempt to contact the witnesses [defendant] identified regarding possible

testimony. None of these witnesses were however present during the times relevant in [defendant's] case and were unable to offer any evidence relevant to [defendant's] defense." Dkt. # 97, Ex. A, at 3. In this case, defense counsel did investigate the leads provided by defendant and determined that the potential witnesses did not have any relevant information. A strategic decision not to call witnesses following an investigation by defense counsel is entitled to deference, and this Court may not second-guess defense counsel's informed decision that certain witnesses should not have been called to testify at trial. See Parker v. Scott, 394 F.3d 1302, 1323 (10th Cir. 2005). Defendant has not made a proffer as to what any of these witnesses might have testified to at trial and, considering that defense counsel contacted or attempted to contact these witnesses, the Court does not find that defense counsel was ineffective for failing to call these witnesses at trial.

**IT IS THEREFORE ORDERED** that defendant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Dkt. # 85) is **denied**. A separate judgment is entered herewith.

**DATED** this 27th day of January, 2010.

*[Signature: Claire V. Eagan]*
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT